UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHANIE C. FARLER,

Plaintiff,

v.

SNOHOMISH COUNTY et al,

Defendants.

CASE NO. 2:25-cv-01853-TL

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff Stephanie C Farler's Emergency Motion for a Temporary Restraining Order ("TRO"). Dkt. No. 25. Plaintiff seeks ex parte relief—relief issued without notice to the named Defendants and before they have a chance to respond. *Id.* Having considered the motion and the relevant record, the Court DENIES the motion.

On September 24, 2025, Plaintiff filed a petition to proceed *in forma pauperis* ("IFP") in this action. Dkt. No. 1. Plaintiff filed a proposed complaint against Defendants Snohomish County, Skagit County, Marlene Sprague, Justice Clark, Darlene Rosenquist, and Does 1–10, asserting a variety of statutory, constitutional, and tort claims. Dkt. No. 1-1. On September 30,

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 1

2025, the IFP petition was granted, and the Complaint was added to the docket. Dkt. Nos. 3, 4. On direction from the Court, however, the Clerk of Court did not issue a summons pending review of Plaintiff's Complaint under 28 § U.S.C. 1915(e)(2)(B). *See* Dkt. No. 24 (Minute Order removing pending motions from the calendar and informing Plaintiff that "under 28 U.S.C § 1915(e)(2)(B), the Court must dismiss a case filed in forma pauperis if at any time it determines that the action is frivolous or fails to state a claim on which relief may be granted. The Court is currently reviewing Plaintiff's complaint under 28 U.S.C § 1915(e)(2)(B) and will not order service of the summons until such review is complete.")

Plaintiff's Complaint involves allegations of a "coordinated campaign of harassment, dispossession, and Retaliation" by the Defendant counties, unknown county officials, and three individuals: Defendants Sprague, Rosenquist, and Clark. Dkt. No. 4 at 16. Defendant Sprague claims ownership of a property at which Plaintiff lives or formerly lived[1] (*id.* at 49), Defendant Rosenquist is Defendant Sprague's sister (*id.* at 16), and Defendant Clark is a neighbor of the property (*id.* at 20). Plaintiff alleges, *inter alia*, that the property rightfully belongs to Alan Sprague, the brother of Defendants Sprague and Rosenquist (*id.*), that Alan Sprague added Plaintiff's name to the deed to protect his rights against his sisters (*id.*), that Plaintiff has been ejected and evicted on the basis of fraudulent documents (*id.* at 43), that Defendants have maliciously caused her wrongful prosecution (*id.* at 9), and that a number of her constitutional rights have been violated in the course of these events and related legal proceedings (*see id.* at 60–64). The Complaint does not include any claims arising under property law or seek declaratory relief as to ownership of the contested real property. *See generally id.*

---

[1] While the motion for TRO refers to a risk of "[h]omelessness and family displacement" (Dkt. No. 25 at 3) it is not clear whether Plaintiff is currently living at the property in question, from which she was evicted (see *id.* at 2 (indicating Plaintiff is living with her mother); Dkt. No. 4 at 79 (alleging that eviction and ejectments from the property at issue are "preventing her from finding housing")).

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 2

On January 30, 2026, Plaintiff filed the instant Emergency Motion for a Temporary Restraining Order asking the Court for an order enforceable against "all defendants, their agents, and any county officials" (Dkt. No. 25 at 1) that would:

> 1. Freeze the property status of 4232 142nd Avenue NE, Lake Stevens, Washington, preventing any transfer, enforcement, eviction, or alteration of title or possession; and 2. Immediately halt coordinated actions by county officials that are causing ongoing and irreparable harm, including enforcement of allegedly fraudulent property documents, retaliatory legal actions, and misuse of official authority in concert with private parties.

*Id.* at 1. Plaintiff has attached to her motion exhibits including the complaint and several other filings or draft filings from a quiet title action brought by Defendant Sprague against Alan Sprague and Plaintiff in Snohomish County Superior Court, *Sprague v. Sprague*, No. 25-2-03990-31. Dkt. No. 25-3 (quiet title complaint); Dkt. No. 25-2 (draft answer to quiet title complaint); Dkt. No. 25-3 (Farler decl. in quiet title action); Dkt. No. 25-4 (motion for summary judgment); Dkt. No. 25-5 (objection to motion to appoint special master). Given the context of these documents, and Plaintiff's assertion that the urgency of her motion is related to a hearing to appoint a special master scheduled for January 30, 2026 (the same day Plaintiff filed her motion), the Court understands Plaintiff's request to be primarily a request that this Court enjoin the ongoing quiet title proceedings in Snohomish County Superior Court.[2]

Federal Rule of Civil Procedure 65(b)(1) allows a court to issue a TRO without notice to the adverse party only if the movant provides "specific facts in an affidavit or a verified complaint" demonstrating "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The movant's attorney (or, here, the pro se movant) must also certify in writing "any efforts

---

[2] To the extent that Plaintiff's reference to "coordinated actions," "retaliatory legal actions," and "misuse of official authority in concert with private parties" includes actions beyond the Superior Court proceedings, the Court can neither enjoin such vague categories of conduct nor discern more specific requests in Plaintiff's motion.

made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). This District's Local Civil Rules reinforce this rule, noting that motions for TROs "without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." LCR 65(b)(1).

Although Plaintiff acknowledges this heightened standard (*see* Dkt. No. 25 at 5), her motion fails to meet it. For one thing, she has not provided "an affidavit or a verified complaint"—that is, a complaint signed under penalty of perjury. She also has not demonstrated "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" or sufficient "reasons why [notice] should not be required." Plaintiff asserts that "[p]rior attempts to seek relief in state court resulted in retaliation, suppression of filings, and accelerated enforcement" and "[p]roviding notice risks further coordinated actions, destruction of evidence, or additional property transfers." *Id.* However, these assertions are conclusory and unsupported by specific facts. See Fed. R. Civ. P. 65(b)(1). It is unclear to the Court why any such events, other than a "coordinated action" to respond to the motion, would result from providing notice as required. On the record before it, the Court does not find that Plaintiff's case falls within those "very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006); see also *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (preliminary injunctive relief—even *with* notice—is an "extraordinary remedy never awarded as of right").

Normally, the analysis would end there: the Court would deny the TRO for failure to comply with Rule 65(b)(1) and allow Plaintiff to renew her motion upon proper notice to Defendants. Here, however, it is not so simple. Because a summons has not been issued, Plaintiff cannot effectuate complete service on Defendants under Federal Rule of Civil Procedure 4(c)(1), and her Complaint may still be dismissed before any Defendants can be served. It would be at

least unusual for Plaintiff to notify Defendants of a motion in this action without serving them with the Complaint, especially before the Court has ruled on whether this case will proceed.

Fortunately, this unusual situation can be avoided, because the motion for a TRO provides enough information for the Court to deny the motion upon a fuller analysis. Because the Court denies the motion, Defendants are not prejudiced by lacking an opportunity to be heard.

In asking the Court to enjoin the resolution of proceedings currently ongoing in Superior Court, Plaintiff seeks relief this Court cannot grant. The Court's authority to issue injunctive relief derives from the All Writs Act, 28 U.S.C. § 1651, and is limited by other statutes. Relevant here, the Anti–Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from enjoining state court proceedings unless one of three narrow exceptions applies. 28 U.S.C. § 2283. Under the Act, the power to enjoin state court actions is available to federal courts only when (1) Congress has expressly authorized it; (2) it is necessary in aid of the federal court's jurisdiction; or (3) it is necessary to protect or effectuate the federal court's judgments. *Id.; see also Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002).

The second and third exceptions clearly do not apply here. There is no federal judgment to protect, and the Superior Court's resolution of the quiet title action will have no effect on this Court's jurisdiction to hear Plaintiff's claims, none of which sound in property law. *See generally* Dkt. No. 4.

The first exception merits more thorough discussion. Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983, which the Supreme Court has found to provide implied authority "expressly authoriz[ing]" federal courts to enjoin state court proceedings where necessary to prevent constitutional violations. *See Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972). "[F]ederal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Id.*

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 5

at 242. However, principles of federalism and comity counsel that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Bennett*, 285 F.3d at 805 (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)). Federal courts generally abstain when asked to enjoin a party from enforcing a state court judgment due to "the importance to the States of enforcing the orders and judgments of their courts." *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987).

As written, the motion for TRO is not within the § 1983 exception because preventing state court proceedings from moving forward would not clearly "prevent great, immediate, and irreparable loss of [Plaintiff's] *constitutional* rights." *Mitchum*, 407 U.S. at 242 (emphasis added). The motion mainly refers to deprivation of Plaintiff's property (or her access to disputed property) and to caregiving responsibilities currently complicating Plaintiff's life (but not clearly related to the requested relief). *See* Dkt. No. 25 at 2.

Reading between the lines, Plaintiff appears to suggest that allowing the quiet title action to move forward would result in "[d]eprivation of property without due process."[3] Dkt. No. 3 at 6. But "[t]he essential requirements of due process . . . are notice and an opportunity to respond"—both of which Plaintiff appears to be receiving in Superior Court. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). While Plaintiff's complaint alleges official misconduct connected to other state court proceedings, there are no such allegations, either in the Complaint or the instant motion, connected to the quiet title action. Indeed, the only reference the Court could find to the quiet title action in the Complaint is a single allegation that it "quiet title lawsuits" are part of a "retaliatory pattern." Dkt. No. 4 at 57. The Superior Court provides a

---

[3] The quoted language appears in a summary of the claims asserted in this action, not in Plaintiff's analysis of imminent harm.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 6

forum for Plaintiff to raise her concerns that the action was brought for an improper purpose and involves "[f]raudulent property transfer," "disputed and potentially fraudulent documents," "false police reports," and any other allegations relevant to the quiet title action (Dkt. No. 25 at 2); that court is also in the best position to resolve these disputes.[4] That Plaintiff may be dissatisfied with determinations made by the Superior Court in the quiet title action, or with other state court proceedings in the past, does not mean she is being deprived of due process.

Because there is no basis for the Court to find an injunction is necessary to prevent a constitutional violation, the § 1983 exception to the Anti-Injunction Act does not apply, and the Court does not have the authority to enjoin state court proceedings or the enforcement of a state court judgment. Moreover, even assuming the Court could grant the requested relief, Plaintiff has not satisfied the requirements for a temporary restraining order under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. at 20. To obtain such relief, a plaintiff must establish four factors: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Id.* Here, Plaintiff has presented only conclusory allegations that do not demonstrate a likelihood of success either on the merits of her underlying Complaint before this Court nor on the merits of her opposition to the quiet title action. Without satisfying the first factor of the *Winter* test, Plaintiff cannot prevail on this motion.

Accordingly, Plaintiff's Motion for a Temporary Restraining Order is DENIED.

Dated this 4th day of February, 2026.

Tana Lin
United States District Judge

---

[4] Indeed, Plaintiff is actively pursuing in Superior Court the same relief she seeks here. *See, e.g.*, Dkt. No. 25-5. This piecemeal approach—seeking remedies in state and federal court arising from the same property dispute—risks conflicting directives of the very kind the Anti–Injunction Act is designed to prevent.